IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**ESTHER K.,**[1]

        Plaintiff,           Civ. No. 6:22-cv-00061-AA

  v.           **OPINION & ORDER**

**COMMISSIONER OF SOCIAL SECURITY**,

        Defendant.

AIKEN, District Judge:

Plaintiff Esther K. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is AFFIRMED and this case is DISMISSED.

BACKGROUND

On January 30, 2019, Plaintiff filed a Title XVI application for supplemental security income, initially alleging disability since April 17, 2015. Tr. 59-60. The application was denied initially and upon reconsideration. Tr. 71, 90. A telephonic hearing was held before an Administrative Law Judge ("ALJ") on February 9, 2021.

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION & ORDER

*Id*. At the hearing, Plaintiff amended her alleged onset date to January 30, 2019, the date of her application. Tr. 35. On March 12, 2021, the ALJ issued a decision finding Plaintiff not disabled. Tr. 27. On November 10, 2021, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id*. at 724-25; *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id*. at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work

Page 2 – OPINION & ORDER

experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 30, 2019, the alleged onset date and date of her application. Tr. 17.

At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease, carpal tunnel syndrome, a history of breast cancer with bilateral mastectomy and residual peripheral neuropathy due to a history of chemotherapy, and a neurodevelopmental disorder. Tr. 17. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 18.

The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations: she could lift and carry twenty pounds occasionally and ten pounds frequently; she could stand or walk, with normal breaks, for a total of six hours in an eight-hour workday; she could sit, with normal breaks, for a total of six hours in an eight-hour workday, she could perform pushing and pulling motions with upper and lower extremities within the aforementioned weight restrictions; she could perform activities requiring bilateral

manual dexterity for both gross and fine manipulation with handling and reaching, limited to frequent, but not constant, handling, fingering, and feeling bilaterally; she could occasionally climb ramps or stairs, stoop, crouch, kneel, and crawl; she could occasionally climb ladders, ropes, and scaffolds; she could frequently balance; and she requires work which entails routine, repetitive tasks and simple decision making. Tr. 20.

At step four, the ALJ found Plaintiff was capable of performing her past relevant work as a cashier. Tr. 25. The ALJ also made alternative findings at step five, finding that Plaintiff was capable of performing work as an Assembler Small Products, with 62,000 jobs nationally, as a Cafeteria Attendant, with 64,400 jobs nationally, and as a Laundry Worker, with 35,300 jobs nationally. Tr. 26. As a result, the ALJ found that Plaintiff was not disabled. Tr. 27.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) improperly discounting Plaintiff's subjective symptom testimony; (2) improperly weighing the medical opinion evidence of Raymond Nolan, M.D., PhD and Polly Tokich, FNP; and (3) improperly discounting the lay witness testimony of Plaintiff's daughter.

### I. Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by discounting her subjective symptom testimony. In evaluating a claimant's symptom testimony, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for

discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.*

Plaintiff alleges disability due to back pain, poor memory, neuropathy, difficulty sleeping, cognitive issues, fatigue, joint pain, and anxiety. Tr. 60. Plaintiff was diagnosed with breast cancer in March 2015. Tr. 464. Treatment included a mastectomy and chemotherapy. Tr. 450, 464-65. After chemotherapy, Plaintiff began experiencing numbness and tingling in her feet, and occasionally in her hands. Tr. 854.

At the hearing, Plaintiff testified that repetition causes her nerve pain to worsen. Tr. 47. She enjoys crocheting but cannot do it very long and only on days when her thumbs do not hurt. Tr. 46. Plaintiff testified that she does her own laundry, goes grocery shopping for herself and her disabled adult son, vacuums, and cooks

simple meals. Tr. 44-45. She also testified that she experiences back pain while vacuuming. Tr. 46. Plaintiff testified that she experiences problems with her short-term memory daily. Tr. 47-48. At previous jobs, she could not remember the steps to do certain things and was reprimanded by supervisors. Tr. 49.

Plaintiff completed two function reports, in March 2019 and in February 2020. Tr. 257-64, 290-97. Plaintiff stated that she does not need reminders from others for personal care or medications, but that she does use a calendar to keep track of when she has showered and taken her medications. Tr. 259, 292. Plaintiff stated that she is able to prepare simple meals, such as sandwiches, frozen burritos, and frozen vegetables. Tr. 259, 292. She cleans one to two times a month, for ten to thirty minutes at a time. Tr. 260, 292. She also does small amounts of grocery shopping for herself and her son, again for ten to thirty minutes at a time. Tr. 260, 293. Plaintiff stated that she has difficulty counting change but reports no other issues managing money. Tr. 261, 294. Plaintiff stated that she avoids activities that require standing. Tr. 262. She stated that she can follow written instructions well but struggles with spoken instructions. Tr. 262, 295. Plaintiff also reported that she can stand or walk for twenty minutes without pain and can sit for thirty minutes without pain. Tr. 298.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 21. Specifically, the ALJ noted that Plaintiff had engaged in conservative treatment

and had shown improvement with treatment. The ALJ also noted that Plaintiff's statements were inconsistent with the medical evidence and with Plaintiff's activities of daily living.

Conservative treatment, failure to seek treatment, or failure to follow-through with prescribed treatment can be a clear and convincing reason for an ALJ to discount subjective symptom testimony. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Here, the ALJ noted that there was "no evidence of any surgical intervention or ongoing injection therapy in the record." Tr. 22. Indeed, Plaintiff was referred by her primary care provider for an electrodiagnostic nerve conduction study, but she declined to participate. Tr. 856, 860, 876. Plaintiff's primary care provider also noted that Plaintiff was "very adamant that she does not want medication for [her back pain]." Tr. 872. The same provider also noted that Plaintiff "has no intention of getting surgery." Substantial evidence supports the ALJ's finding here.

A claimant's improvement with treatment can also be a clear and convincing reason for an ALJ to discount subjective symptom testimony. 20 C.F.R. § 416.929(c)(3); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). An ALJ may not, however, cherry-pick isolated incidences of improvement. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

Here, the ALJ noted that Plaintiff's neuropathy and anxiety had improved with Vitamin B12 injections. Tr. 22-23. Medical records indicate that Plaintiff's "neuropathy improved dramatically with B12 injections." Tr. 945. In December 2018, after her first B12 injection, Plaintiff reported that she felt better and that her

anxiety had improved. Tr. 825. She reported that the B12 gave her consistent energy throughout the day. Tr. 825. In June of 2019, Plaintiff reported that she was sleeping better with progesterone and that her brain fog had significantly improved; she was also feeling much less anxious. Tr. 834. The ALJ's finding here is also supported by substantial evidence.

Although inconsistency with medical evidence, on its own, is not a clear and convincing reason to discount subjective symptom testimony, it can be in combination with other clear and convincing reasons. *Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017). Here, the ALJ identified specific inconsistencies between the medical evidence and Plaintiff's complaints of neck and back pain, carpal tunnel syndrome, and memory issues. Tr. 22.

In evaluating Plaintiff's neck and back pain, the ALJ cited to exams that showed "no evidence of any cervical or thoracic nerve root or spinal cord compromise." Tr. 22, citing Tr. 959-60. The ALJ also cited to musculoskeletal exams that were normal. Tr. 22, citing Tr. 822, 826, 831, 835. Plaintiff consistently presented with normal gait. Tr. 826, 831, 835, 872, 932. At exams, Plaintiff was able to go from sitting to standing without difficulty and her squat rise maneuver was adequate. Tr. 851.

In evaluating Plaintiff's wrist pain and carpal tunnel syndrome symptoms, the ALJ cited to the consultive examination. Tr. 22, citing Tr. 852. Upon exam, Plaintiff was able to make a full fist. Tr. 852. Her finger range of motion was within normal limits. Tr. 852. A pinch test showed normal strength bilaterally. Tr. 852. She was able

to manipulate items without difficulty. Tr. 852. Her grip strength appeared normal. Tr. 852.

Regarding Plaintiff's memory issues, the ALJ noted that Plaintiff denied memory issues at times with providers and that, on examination, Plaintiff's recent and remote memory were intact. Tr. 23, citing Tr. 822, 826, 856. While Plaintiff "missed all three words on memory recall" in the consultive examination, the medical record gives no other indication that Plaintiff struggled with memory issues. Tr. 851. The ALJ's finding here is supported by substantial evidence.

Finally, the ALJ found Plaintiff's statements inconsistent with her activities of daily living. A claimant's activities of daily living may be a clear and convincing reason for discounting subjective symptom testimony when they contradict the claimant's allegations of functional limitations. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ relied on Plaintiff's ability to "prepare small meals, perform small cleaning tasks, shop in stores, and drive." Tr. 22. The ALJ did not explain how these small care tasks undermined Plaintiff's testimony and, as such, this is not a clear and convincing reason to discount the subjective symptom testimony. However, because the ALJ identified three other clear and convincing reasons, each supported by substantial evidence, for discounting Plaintiff's subjective symptom testimony, the ALJ did not err here.

## II. Medical Opinion Evidence

Plaintiff argues that the ALJ erred in evaluating the opinions of consultive examiner, Raymond Nolan, M.D., PhD, and primary care provider Polly Tokich, FNP.

The Ninth Circuit has clarified that under the new regulations, "the former hierarchy of medical opinions – in which we assign presumptive weight based on the extent of the doctor's relationship – no longer applies." *Woods*, 32 F.4th at 787. Now, an ALJ's "decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. "The most important factors that the agency considers when evaluating the persuasiveness of medical opinions are *supportability* and *consistency*." *Id*. at 791 (emphasis added) (internal quotations omitted); 20 C.F.R. § 404.1520c(a). However, the Ninth Circuit clarified that "the extent of the claimant's relationship with the medical provider – what we will refer to as "relationship factors"– remains relevant under the new regulations." *Id*. at 790.

After performing a consultive examination, Dr. Nolan opined that Plaintiff should "restrict bending, twisting and turning of the trunk to occasional basis and limit lifting and carrying to 10 pounds on a frequent basis and up to 20 pounds on occasion." Tr. 853. Dr. Nolan opined that Plaintiff did not need any "specific restrictions on duration of sitting, standing or walking" but that "[s]quatting and kneeling activity should be limited to occasional basis." Tr. 853. Finally, Dr. Nolan opined "[b]ecause of the suspicion of carpal tunnel syndrome repetitive hand wrist activity should be limited to occasional basis." Tr. 853.

The ALJ found Dr. Nolan's opinion partially persuasive. Tr. 24. The ALJ noted that the opinion was "supported by a detailed exam" and "somewhat consistent with the overall evidence." Tr. 24. In crafting the RFC, the ALJ adopted all of Dr. Nolan's limitations except in regard to fingering and hand wrist activity. *Compare* Tr. 20 *with*

Tr. 853. As the ALJ noted, Dr. Nolan's detailed exam found Plaintiff was able to make a full fist and her finger range of motion was within normal limits. Tr. 852. A pinch test showed normal strength bilaterally and Plaintiff was able to manipulate items without difficulty. Tr. 852. Plaintiff's grip strength also appeared normal and she scored 5/5 on wrist dorsiflexion on the left and right. Tr. 852. The ALJ's finding here is supported by substantial evidence.

As Plaintiff's primary care provider, NP Tokich completed a treating source statement. Tr. 935-39. She noted that she has seen Plaintiff since 2017 and that Plaintiff's diagnoses were bilateral carpal tunnel syndrome, generalized polyneuropathy, and degenerative disc disease of neck and spine. Tr. 935. She also noted that Plaintiff needs surgery for carpal tunnel. Tr. 935. NP Tokich noted that Plaintiff's symptoms include aching, burning, and tingling in back, feet, and hands; she also noted that Plaintiff was "now having difficulty with grasping on left hand." Tr. 936. NP Tokich checked the box to indicate that Plaintiff's conditions were capable of causing her symptoms but did not elaborate further. Tr. 936. NP Tokich opined that Plaintiff has to sit for at least half an hour more than five times daily to relieve back and neck pain. Tr. 936. She further opined that Plaintiff could walk one block without rest or significant pain, that Plaintiff could sit for 60 minutes at one time, and that Plaintiff could stand or walk for 30 minutes at a time. Tr. 937. She opined that Plaintiff could sit for only one hour total in an eight-hour workday and could stand or walk for zero hours total in an eight-hour workday. Tr. 937. She opined that Plaintiff would need unscheduled breaks every 25-30 minutes during a workday, and

that each break would need to last 30-60 minutes. Tr. 938. She opined that Plaintiff could never lift ten pounds or more and that she could occasionally lift less than ten pounds. Tr. 938. She opined that Plaintiff could only spend 10% of an eight-hour workday using her hands and arms and grasping, reaching, and fine manipulation. Tr. 938. Finally, she opined that Plaintiff would miss more than ten days of work per month. Tr. 939.

The ALJ found that NP Tokich's opinion was not persuasive. She acknowledged that the opinion was supported by an explanation but found that "the overall evidence is inconsistent with the full extent of the opined limitations." Tr. 24. The ALJ cited exams that showed no evidence of cervical or thoracic nerve root or spinal cord compromise. Tr. 24, citing Tr. 959-60. The ALJ also cited to multiple exams which showed Plaintiff presented with normal gait, with normal musculoskeletal strength, and with only slightly reduced range of motion in her neck. Tr. 24, citing Tr. 822, 826, 831, 835, 872, 932. The ALJ cited to Plaintiff's improvement with treatment and the consultive examination findings regarding her wrist and hand strength. Tr. 24. The ALJ's finding here is also supported by substantial evidence.

### III. Lay Witness Testimony

Finally, Plaintiff argues that the ALJ erred by rejecting the lay witness testimony of Plaintiff's daughter without giving a reason. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay

witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

Plaintiff's daughter completed a function report in March 2019. Tr. 248-56. This report largely echoes Plaintiff's own reports. Plaintiff's daughter reported that Plaintiff was not as strong as before and that she cannot stand, walk, or lift. Tr. 248. She reported that Plaintiff's bones and joints ache constantly and that she has trouble remembering things and processing information. Tr. 248. She reported that Plaintiff prepares meals daily, does light cleaning and laundry, and shops once a week for twenty minutes for groceries. Tr. 251-52. She reported that Plaintiff's ability to handle money has decreased since her chemotherapy treatment. Tr. 252. She reported that Plaintiff can slowly walk a few blocks before taking a break. Tr. 254. Finally, she reported that Plaintiff can pay attention for ten minutes at a time and can follow written instructions. Tr. 254.

Any error here is harmless, as the "testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina*, 674 F.3d at 1117.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED. Judgment shall be entered accordingly.

It is so ORDERED and DATED this ___16th___ day of May 2024.

/s/Ann Aiken
ANN AIKEN
United States District Judge